# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MIRIAM GRUSSGOTT,

          Plaintiff,

v.

MILWAUKEE JEWISH DAY SCHOOL INC.,

          Defendant.

Case No. 16-CV-1245-JPS

**ORDER**

**1.    INTRODUCTION**

Plaintiff Miriam Grussgott filed this action on September 16, 2016, alleging that Defendant Milwaukee Jewish Day School, Inc. violated her rights under the Americans with Disabilities Act ("ADA"). (Docket #1). Defendant moved for summary judgment on October 19, 2016, arguing that it is a religious organization, and that Plaintiff was a ministerial employee, rendering this dispute outside the purview of the ADA. (Docket #12). Pursuant to the parties' agreement, Plaintiff was permitted to conduct limited discovery on the issues raised in the motion. (Docket #23). That discovery apparently took almost five months to complete, as Plaintiff did not submit her response to the motion until May 11, 2017. (Docket #26). Defendant offered its reply on May 23, 2017. (Docket #32). The motion is now fully briefed, and for the reasons explained below, it must be granted.

**2.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides the mechanism for seeking summary judgment. Rule 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The non-movant "need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3. **BACKGROUND**

Because many of the core facts are at least facially in dispute, the Court will provide only a brief timeline here. A detailed description of the parties' facts, and their disputes thereof, will be provided in conjunction with the relevant analysis. All factual discussion is drawn from the parties' factual briefing, (Docket #28 and #34), unless otherwise indicated.

Defendant is a private primary school providing a Jewish education to Milwaukee schoolchildren. Plaintiff was hired for the 2013-14 school year to teach first and second grade Jewish Studies and Hebrew. The classes were so closely linked that both were addressed in a single regular staff meeting which was attended by a rabbi. She was hired for her extensive experience teaching Judaism in schools and congregations. After the first

year, Defendant offered to continue Plaintiff's employment for the next school year, 2014-15. Plaintiff requested that she not teach first graders, and Defendant obliged. Plaintiff returned the next year, this time teaching Hebrew to second and third graders.

According to her complaint, Plaintiff suffers from mental impairment due to a brain tumor, the treatment of which caused her to leave work for a time. (Docket #1 at 2-3). In March 2015, Plaintiff had a confrontation with a student's parent, wherein the parent mocked Plaintiff for her mental limitations. *Id.* at 3. When Defendant heard about the incident, it fired Plaintiff immediately rather than investigate the matter or engage in progressive discipline. *Id.* at 4.[1]

4.  **ANALYSIS**

As noted above, Defendant's motion presents only one issue: whether the ministerial exception to employment discrimination claims bars Plaintiff's suit. The ADA requires reasonable accommodation of employees with disabilities, and prohibits firing such employees because of their disabilities. *See* 42 U.S.C. § 12112(a), (b). This rule does not apply, however, to the "ministerial" employees of a religious organization. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171,

---

[1] As part of her factual presentation, Plaintiff offers the testimony of Michael Broyde, a law professor at Emory University, "to provide expert testimony at trial on the question of whether the employee Miriam Grussgott is an except [sic] ministerial employee of the Milwaukee Jewish Day School under the holding of *Hosanna Tabor Evangelical Lutheran Church & School v. EEOC* and the related discrimination laws and relevant state law." (Docket #30 at 2). With due respect to Mr. Broyde, application of precedent to a given factual scenario is a question of law, and the Court is the only expert permitted to address such questions. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). His testimony has been entirely disregarded.

188 (2012). This "ministerial exception" is rooted in the First Amendment's religious clauses, Establishment and Free Exercise, in that a religious employer's First Amendment interests override the protections afforded to an employee by employment discrimination laws when both apply. *Id.* at 182-190.[2]

For the exception to apply, the Court must find that Plaintiff is a "minister." *Id.* at 190-92. This does not mean that Plaintiff must be an

---

[2]The Seventh Circuit explained the reasoning behind the ministerial exception in addressing a claim of employment discrimination pursuant to Title VII:

> As the Fifth Circuit first articulated in *McClure v. The Salvation Army*, 460 F.2d 553, 560 (5th Cir. 1972), "application of the provisions of Title VII to the employment relationship existing between. . .a church and its minister would result in an encroachment by the state into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment." This rule, often referred to as "the ministerial exception," was further developed by the Fourth Circuit in *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164 (4th Cir. 1985), and adopted by this circuit in *Young v. The Northern Illinois Conference of United Methodist Church*, 21 F.3d 184 (7th Cir. 1994). The court in *Rayburn*, recognizing tensions between freedom of religion on the one hand and the attempt to eradicate discrimination on the other, concluded that in the context of Title VII claims brought against a church by its ministers the "balance weighs in favor of free exercise of religion." 772 F.2d at 1168. The court explained that the "right to choose ministers without government restriction underlies the well-being of religious community." *Id.* at 1167. While this ruling may seem in tension with Title VII, we concur with the Fourth Circuit when it stated: "While an unfettered church choice may create minimal infidelity to the objectives of Title VII, it provides maximum protection of the First Amendment right to free exercise of religious beliefs." *Id.* at 1169.

*Alicea-Hernandez v. Catholic Bishops of Chicago*, 320 F.3d 698, 702-03 (7th Cir. 2003).

ordained head of a congregation. *Id.* at 190. Rather, "[i]n determining whether an employee is considered a minister for the purposes of applying this exception, we do not look to ordination but instead to the function of the position." *Alicea-Hernandez*, 320 F.3d at 703. This inquiry is focused on the position the employee occupied, not the reasons for her termination; to ask whether the reasons were religious or secular would bring First Amendment concerns back to the fore. *Id.*; *Hosanna-Tabor*, 565 U.S. at 194-95.

*Hosanna-Tabor* is the most recent controlling precedent on application of the ministerial exception (the Seventh Circuit has not had occasion to squarely address the issue since 2012), and so the Court places its greatest reliance on that opinion. There, the Hosanna-Tabor Evangelical Church and School (the "Church") was a religious primary school. *Hosanna-Tabor*, 565 U.S. at 177. It employed two categories of teachers: "called," who have both academic and religious qualifications, and "lay," who had no religious requirements. *Id.* Cheryl Perich ("Perich") was hired as a lay teacher, then became a called teacher soon thereafter. *Id.* at 178. She received a "diploma of vocation" and became a commissioned minister. *Id.* Her duties included various secular (math, science, language arts classes) and religious (religion class, leading prayers, attending services) assignments. *Id.* Perich was diagnosed with narcolepsy, left work, and was eventually terminated when she attempted to return to work. *Id.* at 178-79.

The *Hosanna-Tabor* Court did not "adopt a rigid formula for deciding when an employee qualifies as a minister," or otherwise announce any elements to be followed, but instead engaged in a fact-intensive analysis based on the general principles cited above. *Id.* at 191-94. It found the following facts relevant:

1) Her title was "Minister of Religion, Commissioned," and she was tasked in performing that role in accordance with religious guidance;

2) The title required significant religious training as well as a formal commissioning by the congregation;

3) Perich held herself out as a minister, accepting the "called" teaching position, taking a religious employee tax allowance, and in seeking to return to work, stating that she felt that God was calling her back to a teaching ministry; and

4) Her job duties "reflected a role in conveying the Church's message and carrying out its mission," including regularly teaching religion classes and leading prayers.

*Id.* at 191-92. The Court further noted that "[a]s a source of religious instruction, Perich performed an important role in transmitting the Lutheran faith to the next generation." *Id.* at 192. In light of "the formal title given Perich by the Church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the Church," the Court held that she was a minister. *Id.*

*Hosanna-Tabor* also discussed errors made by the Court of Appeals in its decision on appeal. First, it gave too little weight to Perich's title, and the religious training and mission underlying it. *Id.* at 192-93. Second, the fact that lay teachers performed the same religious duties as Perich was relevant to, but not dispositive of, the question of whether her position was ministerial. *Id.* at 193. Finally, the Court of Appeals focused too much on the division of time between religious and secular duties. *Id.* While this is a relevant factor, *Hosanna-Tabor* sought to avoid resolving the ministerial exception by merely referencing a stopwatch. *Id.*

Initially, the Court finds that Defendant is a religious organization entitled to claim the ministerial exception. Though *Hosanna-Tabor* and Seventh Circuit precedent focus on whether the subject employee is a minister, it is clear that the Court must make a preliminary determination of whether the employer is a religious group which enjoys First Amendment protection. *See Stately v. Indian Comm. Sch. of Milwaukee, Inc.*, 351 F. Supp. 2d 858, 867-69 (E.D. Wis. 2004); *Ginalski v. Diocese of Gary*, No. 2:15-CV-95-PRC, 2016 WL 7100558, at *5 (N.D. Ind. Dec. 5, 2016). In most cases this issue is not disputed, and Plaintiff's attempt to contest it here is meritless.

Plaintiff concedes that Defendant is a private school providing a Jewish education. However, Plaintiff questions whether Defendant seeks to teach Judaism as a religion or from an historical and cultural perspective. The former is clearly predominant. Defendant was founded by rabbis who wanted to provide a non-Orthodox school option to Jewish families. Defendant's mission statement reads: "[w]here academic excellence and Jewish values prepare children for a lifetime of success, leadership and engagement with the world." (Docket #14-1 at 5).

Defendant's students are all Jewish and many non-Orthodox rabbis send their children to study there. Defendant claims that "[t]he religious mission of MJDS permeates every aspect of the school." (Docket #28 at 4). For instance, students engage in religious study and prayer daily, as well as observing Jewish holidays and pre-Sabbath rituals. Defendant has a Jewish chapel and Torah scrolls and prominently displays religious texts on its walls. Defendant's policy and procedures manual (the "Manual") describes its religious nature and history, as well as including a section devoted to "Jewish Life." (Docket #14-1). Defendant's website boasts that it

is "a place to strengthen children's connections to Jewish life." (Docket #28 at 6). Defendant maintains that while it does teach secular subjects so that its students may be prepared for later schooling, its Jewish mission and religious teaching are the reasons it exists. Parochial schools are considered religious organizations for purposes of applying the ministerial exception, and Defendant fits neatly within that category. *Fratello v. Roman Catholic Archdiocese of N.Y.*, 175 F. Supp. 3d 152, 165 (S.D.N.Y. 2016) (collecting cases).

Plaintiff's only counterargument is that Defendant's policy and procedures manual (the "Manual") includes a non-discrimination provision which prohibits, *inter alia*, religious discrimination. (Docket #14-1 at 8-9). Plaintiff contends that this policy shows a lack of commitment to Judaism, as opposed to any other religion. Further, she argues that Defendant "would be violating its own policies if it discriminated based on religion, which means that no one who this policy applies to can be subject to the ministerial exemption." (Docket #28 at 4-5). This single provision of the Manual cannot stem the tide of other evidence cited above demonstrating Defendant's religiosity. Defendant unquestionably qualifies as a Jewish religious organization.

Returning to *Hosanna-Tabor*'s primary inquiry, whether the subject employee can be considered a "minister," Defendant maintains that Plaintiff's work was essential to its faith-based mission. Plaintiff taught a program called "Tal Am," "an integrated Hebrew and Jewish Studies curriculum which requires certification." (Docket #28 at 10). She both led and participated in daily prayers, and also taught certain prayers to students. Plaintiff included Jewish content in her classes, such as studying the Torah, using Jewish symbolism, and teaching about Jewish holidays.

An e-mail from a substitute teacher to Plaintiff demonstrates that Judaic influence pervaded Plaintiff's daily teaching activities. (Docket #14-5).[3]

---

[3]The e-mail reads:

Hi Miriam,
We got through all the pages you mentioned: 51, 52, 3 in the album, a gimel page, and reading Chayei Sarah (page 50 seemed to have been done already by most of them). We did not do the cut out stuff on the Chayei Sarah page or color it in. I never got any e-mail from you, but it was OK since we talked on the phone and I took notes. I left the new pictures, words, and gimel worksheets in your mailbox.
We went over the months, the days of the week, the weather, Modeh Ani, Sh'ma/V'ahavta. I called up volunteers, and most people who wanted to, got turns to lead or re-sing or place magnets on the board.
I introduced gav (and beten), gag, and gan with motions to go with them (and we did them as class and also with each kid getting an individual turn). We also reviewed what a kitah is (because they were unclear), and I introduced/reviewed what a gamal is, because it came up in our story of the parasha and it's a gimel word.
When we did the parasha, I used the big book for the pictures, and I had different kids come up to act out part of the Eliezer story (I guided them). I introduced what the cave of machpelah was, and we reviewed who Avraham, Sarah, Yitzchak, Eliezer, and Rivkah were. I had the kids recall what Avraham and Sarah were famous for (that I know they learned about in kindergarten) and they remembered the term hachnasat orchim. Almost all of this I did in Hebrew, but often I would rephrase a Hebrew word in English to make sure they knew what was going on.
Overall the kids were not well behaved, and regardless of whether I explained instructions in Hebrew or English (and I always tried Hebrew first), having them maintain eye contact or follow directions was a huge challenge. I was actually surprised by this, since I do know all of them by name and I also know most of their parents. [Redacted] was completely non-compliant from the very beginning, and had to be removed from the room physically. Several others were blatantly disrespectful. Of course there were others who were angelic. We spent time on the rug at the beginning and end of class, time at the tables, and lots of time moving around. It's a very long class for them. I did also touch base with Barb Lutsky after class as well.
I hope you feel better soon! Let me know if you have any other questions or if you want me to elaborate on anything we did!

(Docket #14-5 at 2-3).

Plaintiff counters that Tal Am instructors do not need to be Jewish or even religious to obtain the required certification. Her participation in any prayers and inclusion of Jewish symbolism and holidays were purely voluntary and not part of her job requirements. Plaintiff further contends that her job had no real responsibilities or duties with regard to the Jewish religion. Defendant concedes that Plaintiff was not an ordained minister, and that her position as a grade school teacher did not reflect significant religious training or a formal commissioning process. Plaintiff was not required to have, and did not accept, a religious call to her position, nor did Defendant demand that Plaintiff conform her personal religious conduct to any standard.

Plaintiff's role does not fit neatly within the factors *Hosanna-Tabor* found relevant. She is not an ordained minister and no one held her out as one, and her job did not require prior religious training or commissioning. In Plaintiff's case, however, these formalistic factors are greatly outweighed by the duties and functions of her position. *Hosanna-Tabor*, 565 U.S. at 199 ("The 'ministerial' exception should . . . apply to any 'employee' who leads a religious organization, conducts worship services or important religious ceremonies or rituals, or serves as a messenger or teacher of its faith.") (Alito, J., concurring). Despite her protestations otherwise, Plaintiff's job involved teaching aspects of Judaism to primary schoolchildren. This included teaching Hebrew, teaching prayers, studying the Torah, recognizing Jewish holidays, and following the Tal Am program. As with Perich in *Hosanna-Tabor*, Plaintiff "performed an important role in transmitting the [Jewish] faith to the next generation." *Id.* at 192. Plaintiff stresses that she only taught Jewish Studies in her first year and Hebrew alone in the second. This contention is meaningless; Plaintiff admits to

teaching a great deal about Judaism and specifically that her role was closely linked to Defendant's Jewish mission. (Docket #33-1 at 6-8).[4]

Seventh Circuit decisions preceding *Hosanna-Tabor* support this result. In *Alicea-Hernandez*, the Court of Appeals applied the ministerial exception to a church's press secretary, noting that her role was "critical in message dissemination, and a church's message, of course, is of singular importance." 320 F.3d at 704. The press secretary "served as a liaison between the Church and the community to whom it directed its message." *Id*. While she did not speak to the community as a whole, Plaintiff's job nevertheless communicated Defendant's Jewish message to the youngest of Milwaukee's Jewish flock. The *Tomic* court held that a church's music director qualified as a "minister," because the playing of religious music is an integral part of religious observance and he was involved in selecting appropriate hymns. *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1040-41 (7th Cir. 2006) *abrogated on other grounds*, *Hosanna-Tabor*, 565 U.S. at 195 n.4 (deciding that the ministerial exception is an affirmative defense, not a jurisdictional bar as *Tomic* believed). Like *Tomic's* selection of music, Plaintiff's lesson plans, including their Judaic content, were set by Plaintiff. *See also Ginalski*, 2016 WL 7100558, at *4 (collecting cases ruling on the

---

[4]One admission is particularly damning:

**Request No. 26**: Admit that your role as a Hebrew and Jewish Studies teacher was important and closely linked to MJDS' mission to promote, and educate its students about, Judaism.

**Response**: Plaintiff admits to teaching Judaism/practicing Jewish Religion.

(Docket #33-1 at 8).

ministerial exception since *Hosanna-Tabor*, which variously applied the exception to a "spiritual director," music director, music teacher, and a "called" Lutheran teacher, but not to a janitor, computer teacher, or a school librarian).[5]

Plaintiff's primary dispute is that in teaching her subjects and conducting various Judaism-centered class activities, she approached the religion from a cultural and historical perspective rather than a faith-based one. This issue revolves around Plaintiff's Hebrew class as opposed to Jewish Studies. Defendant argues that Hebrew is "more than just a language. It is an expression of Judaism[.]" (Docket #14 at 5). Hebrew is the language of Jewish religious texts, and the language itself is "imbued with religious symbolism." *Id.* In Defendant's view, Hebrew is not simply a second language course like Spanish; teaching Hebrew means teaching the Torah, Jewish heritage, and Judaism itself. *Id.* at 5-6. Plaintiff believes the

---

[5]Plaintiff cites two district court decisions which apply out-of-date standards to the ministerial exception, and are therefore inapposite. *Longo* found that an employee was not a minister, because the undisputed facts did not establish that "plaintiff's duties were 'exclusively religious' as in the *Powell* case, or even primarily religious in that they consisted of spreading the faith, or supervising or participating in religious ritual or worship." *Longo v. Regis Jesuit High Sch. Corp.*, 02-CV-1957-PSF-OES, 2006 WL 197336, at *7 (D. Colo. Jan. 25, 2006). This analysis is inconsistent with *Hosanna-Tabor*'s instruction that even a mix of secular and religious functions skewed towards the secular does not mean that an employee is not a minister. *Hosanna-Tabor*, 565 U.S. at 193-94. In *Guinan*, the court limited the ministerial exception to employees who "functioned as a minister or a member of the clergy," noting that "the application of the ministerial exception to non-ministers has been reserved generally for those positions that are, at the very least, close to being exclusively religious based, such as a chaplain or a pastor's assistant." *Guinan v. Roman Catholic Archdiocese of Indianapolis*, 42 F. Supp. 2d 849, 852-53 (S.D. Ind. 1998). In light of *Hosanna-Tabor* and the other more recent precedent cited above, the ministerial exception clearly extends beyond *Guinan*'s boundaries.

opposite. To her, Hebrew is cultural and historical, not overtly religious. Plaintiff points to the following to support her position:

> Judaism has many fluent and articulate spokesmen who express via Hebrew their "Judaism" as cultural and secular. Our Founding Fathers were knowledgeable of Hebrew. Not one of them was Jewish. The official seal of Yale University, "Urim Ve Thumim," is Hebrew, even though Yale is not a Jewish School. Hebrew language, like Spanish, is cultural and historical but not predominately religious. Hebrew is the language of 7 million Israelis, a majority of whom are not "religious."

(Docket #29 at 3-5) (citations omitted).

The Court is not convinced that Plaintiff's scattershot evidence creates a genuine dispute of fact on the matter. More importantly, Plaintiff's position violates the principles behind the ministerial exception. The exception helps ensure that federal courts stay out of matters of faith and doctrine as required by the First Amendment. *Tomic*, 442 F.3d at 1039. Plaintiff's argument questions the tenets of Defendant's practice of Judaism, namely whether they can hold Hebrew as sacred. The First Amendment clearly protects Defendant's right to choose its religious beliefs, and the Court is unable to interfere in what is a matter of faith. *Emp. Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 886 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim.").[6] The Court recognizes that in

---

[6]*DeMarco*, a Second Circuit case which preceded the modern development of the ministerial exception, provides a useful contrast. *Tomic*, 442 F.3d at 1041; *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171-72 (2d Cir. 1993). *DeMarco* held that a math teacher could proceed on his age discrimination claim, even though the reasons for terminating him involved his failure to carry out religious duties.

certain cases, a religious organization could abuse this deference by claiming that certain apparently secular activities are actually religious. Consideration of those hypothetical cases and their unique facts must wait until they arise.[7]

Even assuming that instruction on Hebrew is secular, Plaintiff cannot dispute that a substantial portion of her classroom activities were directed at teaching the Jewish faith. Like *Hosanna-Tabor*, this Court will not consult a stopwatch to determine the ratio between her religious and secular instruction. In the same vein, *Tomic* observed that "Tomic's [music

---

*DeMarco*, 4 F.3d at 167. The two failures cited by his employer were attending mass and leading students in prayers. *Id.* The court noted that "[t]here may be cases involving lay employees in which the relationship between employee and employer is so pervasively religious that it is impossible to engage in an age-discrimination inquiry without serious risk of offending the Establishment Clause." *Id.* at 172. In the case at hand, however, the Second Court found that the district court should be able to try those discrete issues to a jury "without putting into issue the validity or truthfulness of Catholic religious teaching." *Id.* Plaintiff's case appears to be the hypothetical envisioned by *DeMarco*. Teaching Hebrew is so intertwined with Judaism that there is no way to separate out any of its secular components without questioning the validity of an aspect of Jewish belief, thereby offending the First Amendment.

[7]Plaintiff's analogy to the Spanish language is also inapt. Spanish is spoken by a wide range of persons across the globe with varying beliefs, and is not the sacred or symbolic language of any major religion. A better comparison would be Latin, the primary language of the Romans, whose empire has been extinct for centuries. Latin was also formerly the exclusive language of Catholic religious worship. While Latin was once a widespread form of communication, it is all but dead today. Nevertheless, many Catholic educational institutions still teach Latin as a sacred or liturgical language, connected to the institution's overall religious instruction. No one could reasonably believe that those schools are teaching Latin in an attempt to increase their students' communication skills. Hebrew is only a majority language in Israel. Plaintiff cannot reasonably contend that Defendant is teaching Hebrew so that its students may more easily converse with people thousands of miles away. Rather, like Latin in Catholic schools, learning Hebrew is a component of Defendant's Jewish curriculum.

director] duties, unlike those, say, of the person who tunes the organ in St. Mary's Cathedral, had a significant religious dimension[.]" *Tomic*, 442 F.3d at 1041. Plaintiff taught many Jewish concepts to Jewish schoolchildren at a school which "is committed to providing academic excellence and to educating Jewish children in the values and traditions of our Jewish heritage." (Docket #14-1 at 5). Regardless of any secular duties Plaintiff may have had, this role included an unmistakable religious dimension. Though this case is not as clear cut as *Hosanna-Tabor*, Defendant's constitutional rights must override Plaintiff's employment discrimination concerns in a close case. *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.3d 1164, 1169 (4th Cir. 1985) ("While an unfettered church choice may create minimal infidelity to the objectives of Title VII, it provides maximum protection of the First Amendment right to the free exercise of religious beliefs."). Plaintiff must be considered a "minister," and she is therefore subject to the ministerial exception.

5. **CONCLUSION**

Because Plaintiff's former job is considered a ministry of Judaism, the First Amendment bars her from proceeding on an ADA claim against Defendant. Defendant's motion for summary judgment must be granted and this action dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #12) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge